**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Bruce Walker, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-5841 |
| | ) | |
| City of Chicago, Ronald Watts, | ) | |
| Brian Bolton, Robert Gonzalez, | ) | |
| Alvin Jones, and John Rodriguez | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT, RONALD WATTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, Ronald Watts, by and through his attorneys, JOHNSON & BELL, LTD., for his Answer and Affirmative Defenses to Plaintiff's Complaint, states the following:

1.      This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

**ANSWER: Ronald Watts admits this action includes claims that purport to be based on 42 U.S.C. § 1983 and that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.**

2.      Plaintiff Bruce Walker is a resident of the Northern District of Illinois.

**ANSWER: Ronald Watts lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

3.      Defendant City of Chicago is an Illinois municipal corporation.

**ANSWER: Ronald Watts admits the allegations contained in this paragraph.**

4.      Defendants Ronald Watts, Brian Bolton, Robert Gonzalez, Alvin Jones, and John Rodriguez (the "individual officer defendants") were at all relevant times acting under color of

their offices as Chicago police officers. Plaintiff sues the individual officer defendants in their individual capacities only.

**ANSWER: The plaintiff has failed to specify what period constitutes "all relevant times," thus Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Ronald Watts admits he is sued in his individual capacity.**

5.      Plaintiff Walker is one of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

6.      As of the date of filing, more than 150 individuals who were framed by the Watts Gang have had their convictions vacated by the Circuit Court of Cook County.

**ANSWER: Ronald Watts admits that at least one-fifty individuals had their convictions ANSWER: Ronald Watts admits that many individuals had their convictions vacated by the Circuit Court of Cook County. Ronald Watts denies that those individuals were "framed" and denies the remaining allegations of this paragraph.**

7.      Many victims of the Watts Gang are currently prosecuting federal lawsuits. Pursuant to an order of the Court's Executive Committee dated July 12, 2018, these cases have been coordinated for pretrial proceedings under the caption, *In Re: Watts Coordinated Pretrial Proceedings,* 19-cv-01717.

**ANSWER: Ronald Watts admits only that the above listed lawsuits are currently pending in this Court. As to the remaining allegations, Ronald Watts denies the remaining allegations in this paragraph.**

8.      The Executive Committee's Order states that additional cases, such as this one, filed with similar claims and the same defendants shall be part of these coordinated pretrial proceedings.

**ANSWER: Ronald Watts admits that additional cases with similar claims and same defendants shall be part of these coordinated pretrial proceedings.**

9. The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

10. High-ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise but failed to take any action to stop it.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

11. The Chicago Police Department's official policies and customs of failing to discipline, supervise, and control its officers, as well as its code of silence, were a proximate cause of the Watts Gang's criminal enterprise.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

12. Watts Gang officers arrested plaintiff without probable cause, fabricated evidence, and framed plaintiff for a drug offense.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

13. Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, the Circuit Court of Cook County vacated plaintiff's conviction and granted plaintiff a certificate of innocence.

**ANSWER: Ronald Watts admits that plaintiff's conviction was vacated by the Circuit Court of Cook County but denies the remaining allegations in this paragraph.**

14. Plaintiff brings this lawsuit to secure a remedy for illegal incarceration, illegal restraints on liberty, and other injuries, all of which were caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police De-partment's defective discipline policy.

**ANSWER: Ronald Watts admits that plaintiff's complaint seeks damages, but he denies liability to plaintiff for any of the claims asserted in the complaint and/or the damages alleged therein. Ronald Watts denies the remaining allegations in this paragraph.**

15.     On March 11, 2004, plaintiff was arrested by the individual officer defendants at the Ida B. Wells Homes in Chicago.

 **ANSWER: Ronald Watts lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

16.     At the time the officers arrested plaintiff:
a. None of the individual officer defendants had a warrant authorizing the arrest of plaintiff;
b. None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff;
c. None of the individual officer defendants had observed plaintiff commit any offense; and
d. None of the individual officer defendants had received information from any source that plaintiff had committed an offense.

**ANSWER: On information and belief, Ronald Watts admits subsection a and b. Based on information and belief Ronald Watts denies the allegations in subsection c and d.**

17.     After arresting plaintiff, the individual officer defendants con-spired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plain-tiff to be wrongfully detained and prosecuted.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

18.     The false story fabricated by the individual officer defendants included their concocted claim that they saw plaintiff spit bags of drugs out of his mouth.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

19.     The acts of the individual officer defendants in furtherance of their scheme to frame plaintiff include the following:

a. One or more of the individual officer defendants prepared police reports containing the false story, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights;

b. One or more of the individual officer defendants attested to the false story through the official police reports, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights;

c. Defendant Watts formally approved one or more of the offi-cial police reports, knowing that the story set out therein was false; and

d. One or more of the individual officer defendants communi-cated the false story to prosecutors, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

20.     The individual officer defendants committed the above-described wrongful acts knowing that the acts would cause plaintiff to be held in custody and falsely prosecuted for an offense that had never occurred.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

21.     Defendant Watts was one cause of the above-described wrongful acts through his direction, encouragement, and facilitation of similar wrongful acts by the other individual officer defendants.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

22.     As the leader of the above-described criminal enterprise, Watts trained the other individual officer defendants to commit the above-de-scribed wrongful acts, encouraged the other individual officer defendants to commit the above-described wrongful acts, and failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

23.     Plaintiff was charged with a drug offense because of the wrongful acts of the individual officer defendants.

**ANSWER: Ronald Watts admits plaintiff was charged with a drug offense but denies the remaining allegations in this paragraph.**

24.     Plaintiff knew that it would be impossible to prove that the individual officer defendants had concocted the charges.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

25.     Accordingly, even though plaintiff was innocent, plaintiff pleaded guilty to a drug offense on May 19, 2004, and was sentenced to serve 24 months of probation.

**ANSWER: Ronald Watts lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

26.     Plaintiff was deprived of liberty because of the above-described wrongful acts of the individual officer defendants.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

27.     Plaintiff challenged the above-described wrongful conviction after learning that federal prosecutors and lawyers for other wrongfully convicted individuals had discovered the Watts Gang's criminal enterprise.

**ANSWER: Ronald Watts admits plaintiff challenged his conviction but denies the remaining allegations in this paragraph.**

28.     On February 16, 2022, the Circuit Court of Cook County vacated plaintiff's conviction and granted the State's request to *nolle prosequi* the case.

**ANSWER: Ronald Watts admits the allegation in this paragraph.**

29.     On April 13, 2022, the Circuit Court of Cook County granted plain-tiff a certificate of innocence.

**ANSWER: Ronald Watts admits the allegation in this paragraph.**

30.     Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the Chicago Police Department had received many civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive

force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

31. Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

32. High-ranking officials within the Chicago Police Department learned about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang, but they deliberately chose to turn a blind eye to the wrongdoing by Watts and his gang.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

33. As a direct and proximate result of the deliberate indifference of these high-ranking officials, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

34. At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated, encouraged, and condoned the defendants' misconduct.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

35. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**ANSWER: Ronald Watts lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

36.     Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused po-lice misconduct.

**ANSWER: Ronald Watts lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

37.     Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

**ANSWER: Ronald Watts lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

38.     Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the individual officer defendants had been the subject of numerous formal complaints of official misconduct.

**ANSWER: Ronald Watts denies the allegations in this paragraph relating to the "Watts Gang." Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

39.     As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and con-trolling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

40. At all relevant times, the Chicago Police Department maintained a code of silence that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

41. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

42. This code of silence facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph relating to the "code of silence." Ronald Watts denies the remaining allegations of this paragraph.**

43. Consistent with this code of silence, the few people within the Chicago Police Department who stood up to Watts and his gang or who at-tempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

44. Watts and his gang are not the first Chicago police officers whom the City of Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

45. One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

46. Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, un-lawful searches and seizures, and other crimes.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

47. Finnigan and his crew engaged in their misconduct at around the same time that plaintiff was subjected to the abuses described above.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph as they relate to Finnigan. Ronald Watts denies the remaining allegations of this paragraph.**

48. Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

**ANSWER: Ronald Watts denies the allegations on this paragraph relating to "many formal complaints of misconduct." Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

49.     Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

50.     Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

**ANSWER: Ronald Watts admits only that he and Mohammed were charged with a crime in federal court in 2012. As to the remaining allegations, Ronald Watts denies the allegations in this paragraph.**

51.     Defendant Mohammed pleaded guilty in 2012.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

52.     Defendant Watts pleaded guilty in 2013.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

53.     In the case of *Obrycka v. City of Chicago et al.,* No. 07-cv-2372 (N.D. Ill.), a federal jury found that, as of February 2007, "the City [of Chi-cago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

54.     In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police De-partment; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

55.     In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

56.     In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

57.     On March 29, 2019, then-Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

58.     In October 2020, Chicago Police Superintendent David Brown acknowledged in public comments that the code of silence continues to exist.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

59.     The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, Superintendent Brown, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrest, detention, and prosecution described above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

60. As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

61. As a result of the foregoing, all of the defendants caused plaintiff to be deprived of rights secured by the Fourth and Fourteenth Amendments.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

62. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

63. Plaintiff hereby demands trial by jury.

**ANSWER: Ronald Watts admits plaintiff's complaint includes a jury demand.**

Defendant, Ronald Watts, denies Plaintiffs are entitled to the relief sought, or to any relief whatsoever. Defendant respectfully requests that this Honorable Court enter an order striking and dismissing the claims against him, or for any other relief this Honorable Court deems equitable and just.

## AFFIRMATIVE DEFENSES

Defendant's investigation of the facts alleged in Plaintiffs' Complaint is ongoing, and, accordingly, Defendant reserves the right to assert additional affirmative defenses in the future. Notwithstanding the foregoing, Defendant states the following affirmative and other defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Qualified Immunity)

Defendant Watts was a government official, namely a police officer, who performed discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted defendants could have believed his actions to be lawful, in light of clearly established law and information that Defendant Watts possessed. Therefore, Defendant Watts is entitled to qualified immunity as to the Plaintiffs' claims.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Plaintiffs had a duty to mitigate their damages, and any damages awarded to Plaintiffs would be required to be reduced by any amount by which the damages could have been lessened by Plaintiffs' failure to take reasonable action to minimize those damages.

## THIRD AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims in the Complaint are barred by the applicable statutes of limitations.

## FOURTH AFFIRMATIVE DEFENSE

To the extent any injuries or damages claimed by Plaintiffs were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on their part, any verdict or judgment obtained by Plaintiffs must be reduced by an amount commensurate with the degree of fault attributed to them.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims in his complaint are barred by the doctrines of *res judicata*, collateral estoppel, and judicial estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Defendant Watts is entitled to absolute immunity for any and all testimony provided during the underlying criminal court proceedings. *Briscoe v. Lahue,* 460 U.S. 325 (1983), *see also, Stinson v. Gauger,* 868 F.3d 516, 528 (7th Cir. 2015).

## SEVENTH AFFIRMATIVE DEFENSE

Defendant Watts is immune from Plaintiff's state law claims under 745 ILCS 10/2-201 of Illinois Tort Immunity Act. Under 10/2-201 of the Tort Immunity Act, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

## EIGHTH AFFIRMATIVE DEFENSE

Under 745 ILCS 10/2-202 of the Tort Immunity Act, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."

Defendant Watts was a public employee executing and enforcing the law at all relevant times and did not act "willfully and wantonly while doing so. Plaintiff's state law claims against Defendant Watts are therefore barred under 745 ILCS 10/2-202.

## NINTH AFFIRMATIVE DEFENSE

Under 745 ILCS 10/2-204 of the Tort Immunity Act, "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person."

Plaintiff's state law claims against Defendant Watts that are based on evidence of acts or omissions of other persons are barred under 745 ILCS 10/2-204.

## JURY DEMAND

Defendants demand a trial by jury.

Respectfully submitted,

**RONALD WATTS**
Individual Defendant

By    /s/*Brian P. Gainer*
Attorney for Ronald Watts

Brian P. Gainer (gainerb@jbltd.com)
Lisa M. McElroy (mcelroyl@jbltd.com)
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Tel: (312) 372-0770

## CERTIFICATE OF SERVICE

I, Brian P. Gainer, hereby certify that on **August 29, 2023,** I caused to be served the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Brian P. Gainer*